NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

TAMMY P., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, M.P., *Appellees.*

No. 1 CA-JV 21-0206
FILED 12-7-2021

Appeal from the Superior Court in Maricopa County
No. JD531123
The Honorable Connie Contes, Judge, *Retired*

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate, Phoenix
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Samuel A. Thumma delivered the decision of the Court, in which Chief Judge Kent E. Cattani and Judge Maurice Portley[1] joined.

---

**T H U M M A**, Judge:

¶1            Tammy P. (Mother) appeals from the superior court's order terminating her parental rights to her son M.P. Because Mother has shown no reversible error, the order is affirmed.

### FACTS AND PROCEDURAL HISTORY

¶2            Mother has had substance abuse issues, including using methamphetamine, off and on, for 15 years. She tested positive for methamphetamine three different times when she was pregnant with M.P. When she gave birth in November 2018, she lacked stable housing. As a result, the Department of Child Safety (DCS) took M.P. into custody and filed a dependency petition. M.P. was found dependent in December 2018, when Mother did not contest the dependency allegations, and the court adopted a family reunification case plan.

¶3            DCS referred Mother for services, including substance-abuse testing and a treatment assessment, a psychological evaluation and supervised visits. Through March 2019, however, Mother failed to meaningfully participate in services and missed or cancelled several visits with M.P. Mother also continued to use methamphetamine daily.

¶4            The DCS case manager encouraged Mother to engage in services, but Mother said she was "uncommitted" because she had pled guilty to aggravated identity theft in criminal court and would soon be sentenced. Mother served nine months in jail for that offense, during which she completed an alcohol and drug education program, domestic-violence and anger-management counseling, and a parenting course. She also participated in video visits with M.P.

---

[1] The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

¶5            In August 2019, the court changed the case plan to severance and adoption. Later that month, DCS moved to terminate Mother's parental rights based on neglect, chronic substance abuse, and six months' out-of-home placement, and DCS later amended the motion to also allege fifteen months' out-of-home placement.

¶6            In January 2020, Mother was released from jail on the condition that she complete a substance-abuse treatment program. She eventually completed Crossroad's "right track phase I" residential treatment program, but failed to enroll in aftercare. Upon Mother's completion of phase I, her counselor recommended additional residential treatment, but Mother instead moved into a sober-living facility and self-referred for mental-health services through Terros. Mother moved out of the sober-living facility after just two months, however, and she did not follow through with Terros services or consistently drug test during the remainder of 2020.

¶7            In February 2021, DCS again referred Mother for drug testing, but she tested only twice in six weeks. A few months later, Mother submitted to a urinalysis test through the Adult Probation Office; it returned positive for alcohol and amphetamine, though the office awaited retesting results. Mother also continued to miss visits with M.P.

¶8            At the severance adjudication held in April 2021, the court ordered Mother to complete a drug test (hair follicle) and left the case open to await those results as well as retesting results from the Adult Probation Office. After taking the matter under advisement, the court directed DCS to lodge proposed findings of fact, conclusions of law and an order.

¶9            Mother's drug test was positive for amphetamines and methamphetamine, and the Adult Probation Office confirmed Mother's earlier urinalysis test was positive for alcohol, amphetamines and methamphetamine. In June 2021, the court entered DCS' proposed order terminating Mother's parental rights on all grounds alleged. Mother timely appealed. This court has jurisdiction over Mother's timely appeal pursuant to Article 6, Section, 9, of the Arizona Constitution, Ariz. Rev. State (A.R.S.) §§ 8-235(A), 12-120.21(A) and 12-2101(A) and Ariz. R.P. Juv. Ct. 103-104 (2021).[2]

_____

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

**DISCUSSION**

¶10 Mother asserts the superior court violated her due process rights when it did not make original findings of fact or conclusions of law, but instead signed DCS's proposed termination order without any substantive changes.[3] The Arizona "legislature and supreme court have established significant procedural safeguards to protect the fundamental right at stake in juvenile proceedings." *Francine C. v. Dep't of Child Safety*, 249 Ariz. 289, 295 ¶ 12 (App. 2020). To further these protections, by statute

> [e]very order of the court terminating the parent-child relationship or transferring legal custody or guardianship of the person of the child or providing for protective supervision of the child shall be in writing and shall recite the findings on which the order is based, including findings pertaining to placement of the child and the court's jurisdiction.

A.R.S. § 8-538(A); *accord* Ariz. R.P. Juv. Ct. 66(F)(2) (similar). The superior court has a "duty to exercise its independent judgment in making" findings. *Elliott v. Elliott*, 165 Ariz. 128, 135 (App. 1990).

¶11 The primary purpose of written findings is to aid appellate review, *Logan B. v. Dep't of Child Safety*, 244 Ariz. 532, 538 ¶ 18 (App. 2018), by allowing this Court to "determine exactly which issues were decided and whether the juvenile court correctly applied the law," *Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 240 ¶ 24 (App. 2012). Written findings also "prompt judges to consider issues more carefully because 'they are required to state not only the end result of their inquiry, but the process by which they reached it." *Logan B.*, 244 Ariz. at 538 ¶ 18 (citations omitted). This court reviews the adequacy of the superior court's written findings *de novo* as a matter of statutory interpretation, *Ruben M.*, 230 Ariz. at 240 ¶ 20, or, where applicable, a mixed question of fact and law, *Francine C.*, 249 Ariz. at 296 ¶ 14.

---

[3] Although Mother did not raise the issue with the superior court, on appeal, DCS does not assert waiver. *See Aleise H. v. Dep't of Child Safety*, 245 Ariz. 569, 572-73 ¶¶ 11-13 (App. 2018). Accordingly, the court addresses the merits of Mother's argument.

**¶12**       Although Mother takes issue with the superior court's adoption of DCS's proposed findings and conclusions, the court "may adopt proposed findings that the parties submit, . . . *if those findings are consistent with the ones that it reaches independently after properly considering the facts*." *Elliott*, 165 Ariz. at 134 (emphasis added). Mother argues that *Elliott* should not apply in termination proceedings because it involved an appeal from a divorce decree. *Elliott*, 165 Ariz. at 137. But neither A.R.S. § 8-538(A) nor Rule 66(F)(2)(a) prevent the superior court from adopting a party's proposed findings and conclusions after its own independent consideration of the trial record.

**¶13**       Nonetheless, citing *Logan B.*, 244 Ariz. 532, Mother argues that the court improperly delegated its authority and violated her due process rights by adopting the proposed findings and conclusions without changes. *Logan B.*, however, concluded that the superior court erred when it "entered a termination order containing only conclusions of law." *Id.* at 539 ¶ 20. In substance, that meant the court had failed to make any written factual findings as required under A.R.S. § 8-538(A) and Rule 66(F)(2)(a). That is not the case here, as the court's order contains factual findings and the requisite conclusions of law.

**¶14**       Finally, the record does not support Mother's suggestion that the superior court failed to properly consider the facts or come to an independent determination regarding termination. Along with considering the evidence received during trial, when directing DCS to lodge proposed findings and conclusions, the court held the evidentiary record open for Mother's two final drug tests. Even after it received that evidence, the court held the matter under advisement for about a month before it issued the final order. On this record, Mother has shown no error.

## CONCLUSION

**¶15**       The order terminating Mother's parental rights to M.P. is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:    AA